**In Re: QDN LLC, Debtor**

**Synergistic Equities, Ltd., Appellant.**

**Nos. 08–4210, 08–4211.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Nov. 16, 2009.

Opinion filed: Feb. 8, 2010.

Timothy P. Duggan, Esq., Thomas S. Onder, Esq., Jeffrey S. Posta, Esq., Stark & Stark, Lawrenceville, NJ, for Appellant.

Scott S. Rever, Esq., Daniel M. Stolz, Esq., Wasserman, Jurista & Stolz, Millburn, NJ, for Appellee.

Before: AMBRO, ALDISERT, and ROTH, Circuit Judges.

OPINION

AMBRO, Circuit Judge.

Synergistic Equities, Ltd. ("Synergistic") appeals the judgment of the District Court, which, among other things, affirmed the Bankruptcy Court's determination that subject matter jurisdiction existed. We agree that there is subject matter jurisdiction, but we vacate and remand with instructions to dismiss the remaining claims because Synergistic does not have any right to contest an involuntary petition.

## I. Facts and Procedural Background

### A. Filings

This case stems from three separate bankruptcy petitions. We discuss them briefly to provide the relevant context.

The first petition was an involuntary bankruptcy petition filed against Quality Distribution Network, Inc. ("Quality Inc."), on January 24, 2007 (Case No. 1). A Chapter 7 Trustee was appointed. At some time during the proceedings, it was discovered that Inc. was circumventing the bankruptcy process by offloading its operations to a successor firm, QDN, LLC ("QDN"). Adversary proceedings began against QDN in Case No. 1 and resulted in a Consent Order, which included limitations on the actions QDN would be permitted to take. About the same time, QDN issued a check to Synergistic, a creditor and the appellant in this case, that appears to be a preference payment.

The second petition was an involuntary bankruptcy petition filed against Quality Distribution Network, LLC ("Quality LLC"), on June 6, 2007 (Case No. 2).[1] It appears that the petition was meant to be filed against QDN and not Quality LLC.

Indeed, QDN was served at its correct address (the same address as Quality Inc.), QDN's federal identification number was on the filing, and QDN appeared to contest the matter in court. It answered with a statement that it was not the party named in the petition and that the petition named a non-existent alleged debtor. However, QDN also attempted to benefit from the protections of an automatic stay in correspondence with Chase Bank after the filing of Case No. 2, but prior to the filing of Case No. 3, by claiming that an involuntary petition was filed against it in June, 2007.

On September 11, 2007, the Trustee in Case No. 1 filed a motion to appoint a trustee in Case No. 2. On September 14, 2007, Synergistic filed an objection to the appointment of a trustee alleging that the Bankruptcy Court did not have subject matter jurisdiction over the case.

That same day, September 14, 2007, the third petition was filed by QDN (Case No. 3). Unlike the two prior petitions, the third petition was voluntary and filed by the debtor itself.

### B. Proceedings

The Bankruptcy Court held hearings on September 17 and 21, 2007, to decide whether to appoint a trustee in Case No. 2. In the interim, on September 20, 2007, the petitioning creditors in Case No. 2 filed a motion to amend the petition to correct the name to reflect QDN's true legal name. The Bankruptcy Court ruled that the dispute in Case No. 2 was simply a case of misnomer, and was not a jurisdictional issue. The Court noted that the federal ID number was identical, the proper party was served, no one was confused or surprised as to the identity of the parties

---

1. Notably, it is the validity of the filing in Case No. 2 that makes the check issued to Synergistic a payment to a creditor within the preference period. This seems to be the motivation behind this appeal.

involved (in light of the adversary proceedings in Case No. 1 as well as QDN's appearance in Case No. 2), and allowed the petition to be amended to correct the name *nunc pro tunc* to June 6, 2007. Cases Nos. 2 and 3 were consolidated, and a trustee was appointed in the consolidated case.

The District Court affirmed the finding of subject matter jurisdiction, affirmed the consolidation of cases, and affirmed the appointment of the trustee in the consolidated case. This appeal followed.

## II. Jurisdiction and Standard of Review

The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. § 157(b)(1) to hear and determine a case under the Bankruptcy Code.[2] The District Court had jurisdiction to review the Bankruptcy Court orders pursuant to 28 U.S.C. § 158(a)(1). We have jurisdiction under 28 U.S.C. §§ 1291 and 158(d).

We exercise plenary review over the District Court's conclusions of law, including matters of statutory interpretation. *In re Tower Air, Inc.*, 397 F.3d 191, 195 (3d Cir.2005) (*citing In re Prof'l Ins. Mgmt.*, 285 F.3d 268, 282–83 (3d Cir. 2002)). Because the District Court sat as an appellate court to review the Bankruptcy Court, we review the Bankruptcy Court's legal determinations *de novo*, its factual findings for clear error, and its exercises of discretion for abuse thereof. *Id.* (*citing In re Engel*, 124 F.3d 567, 571 (3d Cir.1997)).

**2.** We recognize that Synergistic disputes the existence of subject matter jurisdiction in the Bankruptcy Court. As discussed below, we agree with the Bankruptcy Court that it had jurisdiction.

**3.** Synergistic alleges that the Bankruptcy Court should not have appointed a trustee, should not have consolidated the two involun-

## III. Analysis

While Synergistic raises a host of issues, they essentially devolve to two claims: (1) the Bankruptcy Court lacked subject matter jurisdiction over Case No. 2; and (2) it mishandled Case No. 2.[3] Synergistic, in characterizing its claim as an attack on the subject matter jurisdiction of the Court, is attempting to confer on itself as a creditor the "standing" to oppose an involuntary bankruptcy petition that it would otherwise lack. If, as Synergistic claims, the courts lacked subject matter jurisdiction, then the Bankruptcy Court, the District Court, and our Court would be obligated to notice that defect *sua sponte* and dismiss for want of jurisdiction. *See In re Earl's Tire Serv., Inc.*, 6 B.R. 1019, 1021–22 (D.Del.1980), *superseded by rule on other grounds, as recognized in In re Memorex Telex Corp.*, 241 B.R. 841 (D.Del.1999). On the other hand, if we are satisfied that we have subject matter jurisdiction, Synergistic has no right to plead defects in the involuntary petition or in the Bankruptcy Court's handling of that petition. *Id.*

### A. As a non-filing creditor, Synergistic has no standing to contest the filing of an involuntary bankruptcy petition

■ As a preliminary matter, § 303(d) of the Bankruptcy Code allows a *"debtor ... [to]* file any answer to a[n] [involuntary] petition." 11 U.S.C. § 303(d) (emphasis added). It is well-established that a *creditor,* in contrast, does not have standing to contest an involuntary bankruptcy

tary cases, failed to hold an evidentiary hearing, and erred by considering the answer to the petition in Case No. 2 withdrawn upon the filing of the voluntary petition in Case No. 3. Because Synergistic lacks standing to raise these objections, we express no opinion concerning them.

filing. *In re Earl's Tire Serv., Inc.*, 6 B.R. at 1021–22; *In re Westerleigh Dev. Corp.*, 141 B.R. 38, 40 (Bankr.S.D.N.Y.1992); *In re New Era Co.*, 115 B.R. 41, 45 (Bankr. S.D.N.Y.1990), *aff'd*, 125 B.R. 725 (S.D.N.Y.1991); *In re MacFarlane Webster Assocs.*, 121 B.R. 694, 700 (Bankr. S.D.N.Y.1990); *In re Manson Billard, Inc.*, 82 B.R. 769, 771–72 (Bankr.E.D.Pa. 1988); *see also In re Carden*, 118 F.2d 677, 679 (2d Cir.1941); *In re Spohn Motor Co.*, 158 F.Supp. 855, 855 (W.D.Pa.1958); *In re T.J. Ronan Co.*, 114 F.Supp. 299, 300 (S.D.N.Y.1953). The filing of an involuntary petition is an adversarial proceeding between the filers and the debtor, which may contest the filing at a hearing. *See generally* 11 U.S.C. § 303. Congress chose to preclude creditors from opposing involuntary petitions because such opposition invariably was to protect a preference or to gain some unfair advantage at the expense of other creditors, contrary to the policy of providing equitable distribution of assets among all creditors. *In re Earl's Tire Serv., Inc.*, 6 B.R. at 1021–22.

Synergistic does not cite any authority that indicates it has standing to do anything more than bring the issue of subject matter jurisdiction to the court's attention. It is not the debtor, and therefore under 11 U.S.C. § 303(d) and Federal Rule of Bankruptcy Procedure 1011 it does not have the right to contest the involuntary petition on the merits. Indeed, the only reason Synergistic is contesting the involuntary petition appears to be to protect itself from having a preference voided by moving the petition date to a later date, the very situation Congress tried to avoid.

Thus, we review only the question of subject matter jurisdiction.

## B. There is subject matter jurisdiction in this case

■ The jurisdiction of the Bankruptcy Court allows it to "hear and determine all cases under title 11." 28 U.S.C. § 157(b)(1). Essential to any case under the Bankruptcy Code is a debtor, which includes any person (including a corporation) that resides in the United States. 11 U.S.C. § 109(a). A case naming QDN as the debtor falls within the Bankruptcy Court's jurisdiction.[4] The complication in this case is whether the Bankruptcy Court had jurisdiction over a petition naming "Quality Distribution Network, LLC" as the debtor instead of "QDN, LLC." Synergistic argues that this misidentification is fatal and requires dismissal of the involuntary petition in Case No. 2. Under the facts before us, we disagree.

There is no question that a debtor (QDN) was brought before the Bankruptcy Court, and that QDN knew exactly why it was there. It was served at its address of record, was identified by its federal ID number, appeared numerous times in the Bankruptcy Court, and sent at least one letter to a creditor to inform it of the proceedings against QDN in Case No. 2. The only mistake was a misnomer in the identification of the debtor in the caption of the case, and this was corrected prior to the appointment of a trustee. Other than that mistake, there is no question that QDN was properly before and within the jurisdiction of the Bankruptcy Court.

---

4. Limited liability companies are eligible to file bankruptcy petitions because they are sufficiently similar to a corporation and limit responsibility for the debts to the capital subscribed. *See* 11 U.S.C. § 101(9)(A)(ii); *In re 4 Whip, LLC,* 332 B.R. 670, 672 (Bankr.D.Conn. 2005); *In re Giampietro,* 317 B.R. 841, 844 n. 3 (Bankr.D.Nev.2004); *In re ICLNDS Notes Acquisition, LLC,* 259 B.R. 289, 293 (Bankr. N.D.Ohio 2001). That is obvious here because QDN has filed a voluntary Chapter 11 petition in Case No. 3 without objection as to eligibility.

Misnomer—typically when a plaintiff misnames or misidentifies a party in its pleadings but correctly serves that party— is the classic example of mistake that can be corrected via amendment. In such a case, relation back is appropriate because the party that was served is already before the court. *See* 3 James Wm. Moore et al., *Moore's Federal Practice* § 15.19[3][d] (3d ed.2009) [hereinafter *Moore's* ]. In contested proceedings in the Bankruptcy Court, Rule 7015 provides for the application of Federal Rule of Civil Procedure 15. *See* Fed. R. Bankr.P. 7015. Rule 15, in turn, is the appropriate avenue to correct misnomers via amendment to avoid the situation where a legitimate legal claim is squelched by a party mistakenly identifying the party to be used. *Moore's* § 15.19[3][d].

As recognized by the District Court and the Bankruptcy Court, a misnomer is appropriately remedied by amendment in cases when a plaintiff sues a parent instead of a subsidiary, a corporation instead of a partnership, a building instead of its corporate owner, or a corporation in liquidation instead of its successor. *See id.* § 15.19[3][d] & nn. 37–39 (citing cases). In any event, misnomer is simply not a matter implicating subject matter jurisdiction.

We find Synergistic's sole case citation indicating a lack of subject matter jurisdiction unpersuasive. Specifically, *In re Westville Distribution & Transport*, 293 B.R. 101 (Bankr.D.Conn.2003), dealt solely with a purported *voluntary* petition filed on behalf of a non-existent debtor. The non-existent debtor had a name similar to that of another entity that never intended to file a bankruptcy petition. *Westville* does not address the situation involving an *involuntary* petition for relief, and it explicitly recognized that the two scenarios are "fundamentally different." *Id.* at 102. In the case of an involuntary petition, a scrivener's error can be amended by a filer through the normal process of amendments.

The policy concerns behind *Westville* do not apply in our case. *Westville* was most concerned with non-filers attempting to "vitalize a non-existing entity and then force it into bankruptcy without observing the statutory predicates for involuntary cases." *Id.* That simply is not the case here because we have an involuntary case under § 303 that observed the statutory predicates. The debtor was properly served and did, in fact, show up in court notwithstanding the scrivener's error in naming the entity. The only party objecting to the appointment of a trustee at this point is Synergistic, a non-filing creditor. Thus, we put *Westville* aside.

Other policy concerns raised by Synergistic are also unavailing.[5] First, this is not a case of a "John Doe" debtor named for purposes of an illicit, secret bankruptcy; all involved knew the identity of the debtor, the debtor appeared, and even Synergistic recognizes that it is making a strictly technical objection.[6]

Second, the analogy to Article 9 of the Uniform Commercial Code is simply off point. The granting of security interests requires strict compliance on the name of the debtor because it is intended to give notice to other potential creditors. In con-

---

**5.** While it lacks standing even to make the argument, we note that Synergistic also attempts to invoke our decision in *In re Owens Corning*, 419 F.3d 195 (3d Cir.2005), and the principles of substantive consolidation. That argument completely misses the mark because this case has nothing to do with substantive consolidation.

**6.** This is borne out in Synergistic's Reply Brief at 8–9.

trast, until the order for relief is entered, an involuntary case only involves the petitioning creditors and the debtor. Furthermore, Article 9 is not jurisdictional—an error in name does not deprive a court of jurisdiction, but only acts to deprive a noncompliant creditor of secured status and priority.

Third, an additional reason why these policy concerns are more muted in the case of an involuntary filing is given by § 303(f). Unless and until an order for relief is granted, an involuntary filing has no effect on the affairs of the debtor. 11 U.S.C. § 303(f).

Thus, a debtor actually served and actually appearing to contest an involuntary proceeding cannot dispute subject matter jurisdiction when an amendment later corrects a misnomer. Nor can potential creditors who were not among those to file an involuntary petition. The party the Bankruptcy Code is concerned about, prior to the appointment of a trustee and the entry of an order for relief, is the debtor. It would be a different story if the debtor were not made aware, leading to a true "secret bankruptcy," and an order for relief entered without giving the debtor a chance to object, all because of a misnomer. Here, everyone knew who the debtor was; between Case No. 1 and Case No. 2, there was no confusion as to which entity was before the Court, and the Court's subject matter jurisdiction is not at issue.

In sum, Synergistic's attempt to cast this case of misnomer as a question of subject matter jurisdiction fails. Here, the involuntary debtor was properly served, appeared numerous times in court, and informed a creditor of Case No. 2. Moreover, there is no evidence to suggest anyone was misled. As such, there is no doubt that the Bankruptcy Court had subject matter jurisdiction.

\* \* \* \* \* \*

We therefore affirm the District Court on the issue of subject matter jurisdiction, but vacate and remand with instructions to dismiss the appeal on all other grounds raised by Synergistic.